UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GEORGE LEAL, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-249 |
| | § | |
| JOHN MCHUGH, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs, George Leal and John M. Lozano (Plaintiffs, Plaintiff Leal, or Plaintiff Lozano), filed suit alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA") based on the Corpus Christi Army Depot's ("CCAD") failure to hire Plaintiffs for the newly created Construction Control Representative ("CCR") positions. 29. U.S.C. § 621, *et seq*. After hearing all the evidence and pursuant to Fed. R. Civ. P. 52, this Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

**A. The Plaintiffs and the Supervisors**

1. Luis Salinas, who is now retired, was the Chief of the Facilities Engineering Management Division (FEMD) for CCAD. He previously held the position of Executive Director of Modernization and intended to improve CCAD's business practices by eliminating inefficient practices and adopting various innovative procedures.

2. In order to meet this objective, Mr. Salinas developed two new positions (the GS-12 level CCR positions) that, if approved, would free CCAD engineers and other technicians from having to oversee the implementation phase (i.e., construction) of projects they helped design.

3. Michael Webb was the Chief for the Engineering Plans and Services Branch of FEMD. He was the selecting official for the positions at issue.

4. Mr. Salinas was Mr. Webb's supervisor.

5. Plaintiff Leal, who was born in 1953, was employed by CCAD as a Quality Assurance Specialist, a GS-11 level position, in the Engineering Resource Management Branch within FEMD at the time the two CCR positions were created.

6. Plaintiff Lozano, who was born in 1947, was employed by CCAD as an Engineering Technician, a GS-12 level position, in the Engineering Plans and Services Branch within FEMD at the time the two CCR positions were created.

**B. Mr. Salinas' Statements**

7. At various times, Mr. Salinas asked Plaintiffs about their retirement plans and his inquiries made them uncomfortable. However, the Court credits Mr. Salinas' testimony that he attended school with Plaintiff Leal, that he likely "asked a lot of people" in his age range about retirement as a friendly gesture, and that his purpose was not to pressure anyone into retirement but to express general curiosity

about retirement because he was nearing retirement himself and considered it "taking advantage of [a] benefit."[1]

8. While there is evidence that Mr. Salinas used the terms "new blood" and "young blood," the Court finds that any such expressions were not used as a reference to age, but were used in connection with finding new and innovative ways to do business. Mr. Salinas' testified that, in using the term "new blood," he was not referring to the age of individuals but rather to CCAD's need for new employees from other branches, other facilities, and the private sector who could bring innovative ideas with them.

9. While there was evidence that Mr. Salinas and others used the term "old-timers" to refer to Plaintiffs, the intended reference was to tenure and experience rather than to age.

**C. Prior to the Announcement of the CCR Positions**

10. The CCR positions were opened in July of 2009. Prior to this, Mr. Salinas emailed his staff twice (September 2008 and May 2009), seeking volunteers to perform Quality Assurance duties in addition to their current duties at no extra pay. He indicated that he was seeking approval for a Quality Assurance position (Defendant's Exhibits 19 & 20). Rodolfo Solis, Jr. and Paul Martinez volunteered for these duties. Neither of the Plaintiffs volunteered.

11. On May 11, 2009, Mr. Webb announced that he was assigning Mr. Solis to his branch for 120 days in order to "assist with bringing the new guys up to speed on a

---

[1] All quotes are based on audio recordings of trial testimony because there are no trial transcripts.

number of projects and to provide his expertise as applicable in project development and execution . . . ." (Defendant's Exhibit 21).

12. A number of witnesses, including both Plaintiffs, testified that Mr. Salinas and Mr. Solis had a close relationship and that Mr. Solis was often in Mr. Salinas' office. There was evidence that Mr. Solis was arrogant, a gloater, and exaggerated his experience. It is clear that this attitude caused resentment among the workers.

**D. The Hiring Process**

13. In filling the CCR positions, Mr. Webb received assistance from Human Resource Specialist Sammy Monreal. Mr. Monreal worked with Mr. Webb in identifying keywords and skills to conduct an initial screening of applicant resumes using the software ResumeX. After ResumeX assigned each resume a score, Mr. Monreal reviewed the resumes with the highest scores—including both of the Plaintiffs' resumes. After completing his independent review, Mr. Monreal created a twelve-person "referral list" that he then forwarded to Mr. Webb. Neither Plaintiff was on the referral list. Mr. Monreal testified that based on his review of the resumes, he did not believe that Plaintiffs were qualified for the CCR positions.

14. While Mr. Webb did not conduct interviews and did not create a selection factor "matrix" when hiring for the positions, CCAD's policies and guidelines did not require him to do so.

15. Mr. Webb made his selection by "a cumulative review" of "whoever represented the best possible experience for the job," an inquiry that included the applicants' training, education, and experience.

16. On October 1, 2009, Mr. Webb selected John Clay (66 years of age) and Mr. Solis (45 years of age) for the two CCR positions. Mr. Martinez (59 years of age) was selected as an alternate. Mr. Solis and Mr. Martinez were the two individuals who had volunteered for the Quality Assurance duties.

17. Mr. Webb testified that he did not consult with Mr. Salinas in making his selections. Marciano Gonzalez, a general engineer at CCAD, testified that Mr. Webb told him that the hiring decision "was not his choice" and was made only after having "a long discussion" with Mr. Salinas.

18. After learning that they had not been selected for the CCR positions, the Plaintiffs approached Mr. Monreal's supervisor to express their concerns that they were not included on the referral list.

19. Mr. Monreal met with his supervisor to review the Plaintiffs' resumes once again and, although he felt it was debatable whether they were qualified for the CCR positions, he nonetheless placed the hiring process on hold.

20. Mr. Clay and Mr. Solis had already been informed of their selection, so Mr. Salinas emailed Human Resources on behalf of his division to say that the hiring hold was "totally unacceptable" and that "[w]e reviewed each resume carefully and it took weeks before we made the selections." (Defendants' Exhibit 5)

21. On October 8, 2009, Mr. Monreal sent Mr. Webb a second fourteen-person referral list that included both Plaintiffs.

22. Mr. Webb reviewed each resume on the new referral list and selected Mr. Clay and Mr. Solis for the two positions and Mr. Martinez as the alternate.

### E. The Candidates

23. Mr. Clay, who at 66 years of age when selected for the position was older than both of the Plaintiffs, had over twenty-five years of experience in the field.

24. Mr. Solis, who was 45 years of age at the time he was selected for the position, began his employment with CCAD in December of 2006 as a cost estimator. He had over eight years of experience in the private sector as a construction field project manager and had performed quality control duties on a host of commercial and industrial developments.

25. Mr. Martinez, who at 59 years of age when selected for the alternate position was older than Plaintiff Leal and three years younger than Plaintiff Lozano, also had over twenty-five years of experience in the field.

26. Plaintiff Leal—who was 56 years of age at the time of his non-selection—began his employment with CCAD in 1987 and had held various positions within the organization, including quality assurance specialist, contractors officers representative, engineering technician, and material maintenance management specialist. Plaintiff Leal had private sector industrial and residential construction experience, but failed to highlight it on his resume.

27. Plaintiff Lozano—who was 62 years of age at the time of his non-selection—began his employment with CCAD in November of 1981 as an engineering technician. During that time, Plaintiff Lozano completed three overseas deployments in the Middle East with the U.S. Army Corps of Engineers as a

construction quality assurance representative at a GS-13 level—receiving the Commander's Award for Civilian Service three times.

28. Mr. Webb was looking for applicants with experience in industrial, heavy industrial, commercial or other construction projects similar in nature to those at CCAD. He was familiar with the applicants and had personal knowledge of the work they did.

29. Mr. Clay worked for Mr. Webb and was his top candidate for the CCR positions.

30. Mr. Webb was not concerned with Mr. Solis' limited government experience because he had comparable private-sector experience and because of Mr. Solis' "performance on the job." Mr. Solis "had volunteered to take on additional duties . . . he was acting really on his own accord and stepping up . . . being kind of that guy that would go . . . above and beyond . . . without extra pay in order to try and help the organization out . . . ."

31. Mr. Webb concluded that Plaintiff Lozano was qualified for the job but was not the best candidate from the pool of applicants. According to Mr. Webb, Mr. Lozano did not show the same enthusiasm and job performance as others had shown.

32. Mr. Webb concluded that Plaintiff Leal did not have the right qualifications for the position based on a review of his resume.

# **CONCLUSIONS OF LAW**

A. **Applicable Law**

1. This Court has federal question jurisdiction over this action pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* 28 U.S.C. § 1331.

2. The ADEA's federal sector provision prohibits age discrimination in employment, stating that "[a]ll personnel actions affecting employees or applicants for employment [at various federal agencies] who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

3. Section 633a's language differs from the ADEA's non-federal sector provision stating that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). *See also Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008) (stating that the ADEA's federal-sector provision "differs sharply" from its private-sector provision). The Supreme Court in *Gross v. FBL Financial Services, Inc.* interpreted § 623(a)'s "because of" language as requiring that the plaintiff prove "that age was the 'but-for' cause of the employer's adverse decision." 557 U.S. 167, 176 (2009).

4. In vacating this Court's order granting Defendant's motion to dismiss, the Fifth Circuit noted that "*Gross* did not discuss the ADEA's federal sector provision . . . and neither we nor the Supreme Court has addressed whether *Gross* applies to that provision." *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013). The Fifth Circuit

discussed the D.C. Circuit case of *Ford v. Mabus* which held that the ADEA's federal-sector provision required the plaintiff "to show that age was *a* factor in the challenged personnel action" rather than a "but-for" cause. *Id*. at 412 (citing *Ford v. Mabus*, 629 F.3d 198, 205-06 (D.C. Cir. 2010)) (emphasis in original).

5. This Court holds that the ADEA's § 633a federal-sector provision requires the plaintiff to prove that age discrimination was a factor rather than the but-for cause of the adverse action. *See also Fuller v. Gates*, 2010 WL 774965, at *1 (E.D. Tex. Mar. 1, 2010) ("The language of § 633a(a) compels the court to conclude that a mixed-motive analysis continues to apply in claims against the government.").[2]

6. In the absence of direct proof of discrimination, the plaintiff in an age discrimination case must follow the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination based on age, a plaintiff is required to prove that: 1) he is over 40; 2) he is qualified for the position; 3) he suffered an adverse employment decision; and 4) he was replaced by someone younger or treated less favorably than similarly situated younger employees. *Leal*, 731 F.3d at 410-11 (citing S*mith v. City of Jackson Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).

7. If the plaintiff establishes a prima facie case, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer provides

---

[2] As discussed below, this Court finds that Plaintiffs' claims would fail under either the but-for causation or mixed-motive age discrimination standard.

such a reason, the plaintiff is given an opportunity to show that the employer's stated reason for the rejection was in fact pretext. *Id.* at 804. However, the plaintiff maintains "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Thus, in order to rebut a defendant's showing of a nondiscriminatory reason for its actions, "[i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original).

**B. Plaintiffs Met Their Burden of Establishing a Prima Facie Case**

8. The Plaintiffs met their burden of establishing a prima facie case of age discrimination because: 1) both are over the age of 40, 2) both are arguably qualified for the CCR position, 3) neither was promoted, and 4) one of the positions was filled by someone younger.

**C. Defendant Established a Legitimate, Nondiscriminatory Reason for Hiring Mr. Solis Over Plaintiffs**

9. This Court finds that Mr. Webb's reasoning for hiring Mr. Solis over the Plaintiffs establishes a legitimate, nondiscriminatory reason for the challenged action.

10. Mr. Webb testified that he was looking for an applicant with experience in performing quality assurance over projects similar in nature as those at CCAD—including commercial and industrial projects.

11. Mr. Solis had eight years of commercial experience as a construction field project manager with Fulton Construction Corporation. He also gained industrial experience on at least three projects: the renovation of a hospital, the construction of a distribution warehouse, and the expansion of a cold storage facility. While at CCAD, he volunteered to perform duties similar to the CCR duties for months without pay, setting him apart from all other applicants except Mr. Martinez who was chosen as an alternate.

### D. Mr. Salinas Was Not in Control of the Hiring Decision

12. If an employee can demonstrate that others had influence over the official decisionmaker, their discriminatory attitudes can be imputed to the formal decisionmaker. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). "We therefore look to who actually made the decision or caused the decision to be made, not simply to who officially made the decision." *Id.* at 227.

13. This Court concludes that Mr. Salinas did not influence Mr. Webb's selections for the CCR positions.

14. However, even if Mr. Salinas was somehow in control of the selection process, this Court finds that none of his statements constitute evidence of discriminatory intent. *See Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993) ("Without more, [statements regarding retirement] merely demonstrate a new supervisor's reasonable inquiries about the ages of the members of his work force and their known plans for the future—plans on which to gauge the anticipated longevity of his crew."); *see also Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992)

(Posner, J.) ("[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct.").

15. When taken in context, Mr. Salinas' statements pertaining to "new blood" and even "young blood" show, at worst, an inelegant way of communicating his desire to bring innovative approaches to CCAD.

16. In *Hawkins v. Frank Gillman Pontiac*, the Fifth Circuit held that enough evidence existed for plaintiff to survive defendant's motion for summary judgment because the company's supervisor stated that he wanted "new blood . . . you know, younger people." 102 F. App'x 394, 396 (5th Cir. 2004). Unlike *Hawkins*, there is no competent evidence in the record here that Mr. Salinas was seeking "younger people" or that he ever made direct reference to anyone's age.

17. Similarly, the evidence shows that Mr. Salinas was merely fulfilling his curiosity when asking about the Plaintiffs' retirement plans because he was nearing retirement himself. In fact, Mr. Salinas subsequently retired from CCAD in 2010.

**E. Plaintiffs Failed to Show that Defendant's Stated Reason for Not Hiring Either of Them Was Pretext for Discriminatory Intent**

18. Plaintiffs argue that Defendant's stated reasons are pretextual because Mr. Solis was preselected for the position, Mr. Webb did not follow internal hiring procedures, and Plaintiffs were clearly more qualified than Mr. Solis. The Court rejects Plaintiffs' arguments.

19. First, the evidence is insufficient to establish that Mr. Solis was preselected for one of the CCR positions. There was evidence that Mr. Salinas had a closer relationship to Mr. Solis as compared to other CCAD employees, and that Mr. Solis may have stated that he was going to get the job. However, the Court concludes that the evidence as a whole fails to establish any preselection.

20. Second, Plaintiffs are incorrect in alleging that Mr. Webb did not follow internal hiring procedures. Mr. Webb was not required to conduct interviews or undertake other procedures when hiring for the CCR positions.

21. Last, this Court concludes that the Plaintiffs were not "clearly better qualified" than Mr. Solis to an extent that "no reasonable person[] in the exercise of impartial judgment" would have selected Mr. Solis over either Plaintiff. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001), *abrogated on other grounds by Spencer v. Schmidt Elec. Co.*, 2014 WL 3824339, *3-4 (5th Cir. 2014 Aug. 5, 2014) ("[T]he bar is set high for this kind of evidence because differences in qualifications are generally not probative of discrimination unless those disparities are 'of such weight and significance that *no reasonable person*, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff . . . .'" (quoting *Deines v. Tex. Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999) (emphasis added))); *see also Deines*, 164 F.3d at 281 ("Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide. The

single issue . . . is whether the employer's selection . . . was motivated by discrimination.").

22. Mr. Webb considered Mr. Solis a proven commodity who offered a strong blend of CCAD as well as private-sector experience.

23. Both Plaintiffs made strong cases at trial for why their decades of experience made them the best candidates for the two CCR positions. However, it is not this Court's job to second-guess or supplant Mr. Webb's decisions. *See Deines*, 164 F.3d at 280 ("[W]e judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question."). Rather the job of this Court is to determine whether the selection was motivated by discrimination. The issue here is not whether Mr. Webb made the most fair or the best possible decision in hiring Mr. Solis over the Plaintiffs, but rather, whether the selection was motivated by discrimination. *See id.* at 281. The Court concludes that Defendant was not motivated by discrimination in selecting Mr. Solis over the Plaintiffs for the CCR position.

24. Thus, Plaintiffs failed to prove that age discrimination played a factor in their non-selection—much less that age discrimination was a but-for cause of the adverse action.

## **CONCLUSION**

For the reasons stated above, this Court concludes that Defendant did not violate the ADEA in this case. Any findings of fact herein that are more properly construed as a conclusion of law shall be so construed and vice versa. The Court grants judgment in favor of the Defendant.

ORDERED this 27th day of October, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE